IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BREON M.,                                )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          1:25CV188
                                         )
FRANK BISIGNANO,[1]                      )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Breon M. ("Plaintiff") brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security

denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under, respectively, Titles II and XVI of the Act.  The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for review.

I.        PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on January 12, 2021, alleging a

disability onset date of July 3, 2019, in both applications.  (Tr. at 18, 234-64.)[2]  His applications

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025,
and he took the oath of office on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Frank Bisignano should be substituted as the Defendant in this suit.  Neither the Court nor the parties need
take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security
Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

were denied initially (Tr. at 90-105, 130-49) and upon reconsideration (Tr. at 106-23, 153-68.) Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 169-71.) Plaintiff, along with his attorney, attended a hearing on March 7, 2023. (Tr. at 69-89.) Following the hearing, the ALJ sent Plaintiff for a consultative examination. Thereafter, on December 12, 2023, Plaintiff, along with his attorney, attended the subsequent telephone hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 18, 42-89.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 35), and on January 23, 2025, the Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere

2

scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

_____

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 3, 2019. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 21.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease, disorders of the muscle, ligament and fascia, degenerative joint disease, osteoarthrosis and allied disorders, osteoarthritis, headache, obesity, arthralgias, and hernia[.]

(Tr. at 21.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 23-24.) The ALJ

---

(mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

Case 1:25-cv-00188-JEP    Document 15    Filed 03/31/26    Page 5 of 15

therefore assessed Plaintiff's RFC and determined that he was limited to sedentary work with additional limitations including

> standing and walking up to 2 hours and still using a single prong cane for ambulation; frequently reaching, handling, fingering, and feeling; occasionally using ramps and stairs; occasionally balancing, stooping, kneeling, and crouching—all while using a cane; no exposure to workplace hazards including unprotected heights, dangerous machinery, or ladders, ropes or scaffolds; and no exposure to loud noise levels.

(Tr. at 24.) Notably, the ALJ further found that Plaintiff remained capable of "sitting without limitations." (Tr. at 24.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff was unable to perform any of his past relevant work. (Tr. at 33.) Nevertheless, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 34-35.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 35.)

Plaintiff now contends that, when assessing his RFC, the ALJ erred by failing to perform a function-by-function evaluation of evidence relating to Plaintiff's ability to sit for prolonged periods, despite evidence suggesting greater limitations. As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe

v. Colvin, No. 15-1098, 2016 WL 3349355, at \*9 (4th Cir. June 16, 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at \*7. An ALJ must "both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted) (quoting Monroe, 826 F.3d at 189).

The Fourth Circuit has noted that a _per se_ rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637.

Here, Plaintiff challenges the ALJ's finding that he remained able to sit without limitation during the time at issue, despite Plaintiff's statements at both the hearing and to his providers that he has problems sitting for long periods due to back pain. (See Tr. at 25, 26-27, 30.) At the first hearing, Plaintiff testified that he could only sit for 3 to 5 minutes before he would need to change positions, that sitting for a long time would cause his back to lock up, and that he had to spend half the day laying down. (Tr. at 80-82.) At the subsequent hearing, Plaintiff again testified regarding his inability to sit for long periods. (Tr. at 60.) At the hearings, Plaintiff's attorney specifically noted that the Functional Capacity Evaluation and Consultative Examination included limitations on sitting (Tr. at 47, 925, 968, 970-71, 1113, 1120-21, 1124), and counsel pointed to evidence in the record reflecting the need for Plaintiff to change positions and avoid prolonged standing. (Tr. at 88) (citing Tr. at 925). In addition, the vocational experts at each hearing testified that if a hypothetical individual with Plaintiff's other limitations needed the ability to alternate between sitting and standing, "there would not be any jobs" and he "would not be able to sustain full time competitive employment." (Tr. at 88, 66.)

In Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377 (4th Cir. 2021), the Fourth Circuit held that where, as here, a plaintiff's ability to sit is contested, the ALJ must include an analysis of this function in her decision. In Dowling,

> Appellant . . . argued throughout her administrative and judicial proceedings that her IBD and anal fissure cause her to experience discomfort when she sits for a prolonged period of time. But the ALJ apparently concluded that Appellant was not restricted in her ability to sit, as he did not indicate that her RFC was limited because of those problems. This conclusion should have been the result of an analysis that was separate from the ALJ's appraisal of Appellant's ability to perform other functions, and should have been accompanied by "a narrative discussion describing" the evidence supporting it. . . . The ALJ's

8

evaluation of Appellant's ability to sit was lacking in both respects. The ALJ never specifically discussed the extent to which Appellant's alleged sitting problems impacted her ability to perform sedentary work. The ALJ could not have supported a conclusion in this regard through a narrative discussion concerning the relevant evidence because he reached no such express conclusion in the first instance. In fact, the ALJ barely mentioned Appellant's sitting problems in his decision, and discussed them only when rattling off a laundry list of her many impairments and functional restrictions. This grouping of Appellant's sitting limitations with her other impairments and restrictions is a far cry from the "function-by-function analysis" the ALJ was required to conduct.

Dowling, 986 F.3d at 388.

In the present case, as acknowledged by the ALJ, a lumbar MRI performed in May 2019 "showed mild degenerative changes at L4-5 and L5-S1 with central disc protrusions." (Tr. at 25.) At that time, Plaintiff demonstrated positive seated straight leg raising tests bilaterally and well as tenderness of the lumbosacral junction and SI joint and limited flexion and extension of the lumbar spine. (Tr. at 25.) Thereafter, Plaintiff continued to report back pain to his providers. In September 2019, Plaintiff "specifically reported having trouble sitting for long periods of time due to back pain" and again exhibited a "tender lumbosacral junction with forward flexion and extension." (Tr. at 25.) His provider suggested steroid injections. (Tr. at 26.) Plaintiff returned to the same provider, EmergeOrtho, in July 2021 with the same pain complaints, and continued to exhibit lumbar pain with forward flexion and extension and a positive straight leg raising test. (Tr. at 26.) In fact, the record is replete with Plaintiff's complaints of back pain, particularly when sitting for more than brief periods. (See, e.g., Tr. at 485, 506, 512, 517, 528, 602-03, 608, 614, 620, 625, 660, 662, 687, 728, 750, 902, 913, 958, 1011, 1017, 1049, 1055, 1063, 1075, 1088, 1102, 1120-21, 1124, 1137, 1145-46, 1153-54, 1175-76, 1183-84, 1191-92.)

9

In both September 2021 and June 2022, Plaintiff presented to Dr. David Jones of Carolina Neurosurgery & Spine for surgical consultations regarding his ongoing back pain. (Tr. at 26.) Dr. Jones obtained an updated lumbar MRI, but he did not recommend spinal surgery. Instead, Dr. Jones "suggested a spinal cord stimulator trial, acupuncture, physical therapy, and chiropractic care." (Tr. at 26, 910.) The ALJ found that "[t]he recommendation of a spinal cord stimulator and other modalities does provide some support for an appreciation of significant pain and the need for treatment[.]" (Tr. at 26.) The ALJ also noted Plaintiff's updated MRI, performed on September 29, 2021. (Tr. at 919-20.) The testing revealed "[m]ild loss of disc height, disc bulge and mild facet degenerative change resulting [in] mild bilateral neural foraminal narrowing" at L4-5. (Tr. at 920.) At L5-S1, the imaging further revealed that the small central disc protrusion noted on the 2019 MRI now "contact[ed] the bilateral descending S1 nerve roots." (Tr. at 920.)

In an effort to manage his pain, Plaintiff received narcotic pain medications through Heag Pain Management Center from 2020 forward. (Tr. at 26.) As recounted in the ALJ's decision, during 2020 and 2021, Plaintiff "routinely reported pain levels of 10 out of 10 even when on medications," but in 2022 he began reporting "adequate pain control from his medication doses and stabilized activity [sic] of daily living with his pain management regimen." (Tr. at 26, 1049, 1055, 1068, 1075, 1080.) These records reflect that Plaintiff continued to report pain levels of 8 out of 10. (See Tr. at 1049, 1055, 1068, 1075.) Plaintiff reported that his medications only relieved about 20% of his pain, but he still conceded that

10

this amount of pain relief was "enough to make a real difference in [his] life."[5] (Tr. at 1050, 1056, 1075.)

With regard to the medical opinion evidence, the record includes Functional Capacity Evaluations, a vocational assessment, and opinions rendered by State agency medical consultants, consultative examiners, and treating physicians. Notably, these assessments ranged from finding that Plaintiff could perform a limited range of medium exertional level work to finding total disability. They also ranged over several years. However, with the exception of the State agency consultants, both of whom also opined that Plaintiff could stand and/or walk for a total of 6 hours in an 8-hour day and required no cane, the opinions all included at least some limitation on sitting, such as a limitation to "frequent" sitting or a sit/stand option. (Tr. at 28-31.) With regard to sitting, the opinions reflect:

- The recommendation of Plaintiff's treating orthopedic surgeon, Dr. Beane, who issued work restrictions in October 2020 and July 2021, recommending that Plaintiff was limited to sedentary work with standing as needed, and that he should "avoid[] prolonged standing or sitting." (Tr. at 662, 656.)

- The subsequent recommendation of Dr. Beane in May 2022 after obtaining a Functional Capacity Evaluation, recommending only "frequent sitting" with no "prolonged sitting," which Dr. Beane noted would preclude Plaintiff from returning to his prior sedentary position due to the limit on prolonged sitting. (Tr. at 925.)

- A Vocational Rehabilitation evaluation in August 2022 reflecting that Plaintiff "alternated between sitting or standing (8 minutes or less)" and "exhibited pain behaviors of wincing and repositioning in his chair when seated," leading the rehabilitation counselor to conclude that "until [Plaintiff] finds treatment that alleviates some of his symptoms, he is not employable." (Tr. at 750, 755.)

- A Consultative Examination, obtained in June 2023 after the first hearing at the direction of the ALJ, in which Dr. Molero concluded that Plaintiff could

_____

[5] On June 2, 2022, Plaintiff described his pain relief at 80%, but this appears to be a one-time occurrence. (Tr. at 1069.)

11

not sit more than 10 minutes at a time and could not sit more than 4 hours in a workday. (Tr. at 1124.)

The ALJ ultimately credited none of the opinions, explaining that he "decline[d] to directly adopt any opinion, whether from a treating source or otherwise, because [Plaintiff's] signs/symptoms were non-static in nature and because [Plaintiff's] alleged signs/symptoms were significantly inconsistent with the objective findings in the record." (Tr. at 32.) Instead, the ALJ explained that he "considered each opinion in the context of the overall record as well as in comparison [to] the opining source's own treatment notes and in comparison to other opinions in the file." (Tr. at 32.)

Following this statement, the ALJ immediately transitioned into the relevant pain standard without returning to explain why he rejected the opined limitations, particularly with regard to sitting. Thus, the only two concrete reasons provided for the ALJ's findings were the "non-static" nature of Plaintiff's symptoms and their significant inconsistency with the objective findings. However, it is not clear how these two reasons relate to Plaintiff's limitations on sitting. First, it is not clear what the ALJ means by the "non-static" nature of Plaintiff's symptoms. The records are consistent over the years at issue that Plaintiff reported significant low back pain, aggravated by prolonged sitting, and his providers credited his statements, finding that he continued to qualify for narcotic pain medications and referrals for additional therapy, injections, and a spinal cord stimulator. Second, with respect to the ALJ's conclusion that Plaintiff's "alleged signs/symptoms were significantly inconsistent with the objective findings in the record," it is not clear how this addressed Plaintiff's limitations on sitting. Throughout the decision, the ALJ pointed to (1) MRI imaging noting only "mild degenerative disc disease with no nerve root involvement and no other acute or chronic basis

12

for his pain"; (2) findings of "normal strength, tone and sensation" rather than deconditioning if Plaintiff were as limited as alleged; and (3) the lack of emergent or urgent care treatment for pain. (Tr. at 27, 29, 31, 32.) As to the first of these, the MRI imaging, Plaintiff's orthopedic surgeon Dr. Jones concluded that based on the imaging, Plaintiff's low back pain was "discogenic" (Tr. at 910) and therefore not a candidate for surgery. Dr. Beane's assessment and recommendations as to no prolonged sitting took that imaging into account (Tr. at 656, 661), and Dr. Beane specifically explained that Plaintiff must avoid prolonged sitting "to augment nutrition to the disc which occurs by motion." (Tr. at 657, 662.) It is not clear if or on what basis the ALJ concluded that the imaging was inconsistent with Dr. Beane's assessment and conclusions regarding Plaintiff's sitting limitations. Second, as to the "normal strength, tone and sensation," the ALJ points to the lack of deconditioning, noting that there would be a loss of muscle strength and tone if Plaintiff were not standing and moving, but it is unclear how that relates to Plaintiff's limitations in sitting or how Plaintiff's regular standing from sitting would necessarily result in deconditioning. Finally, with respect to the lack of emergency or urgent care visits, the record reflects regular visits with a pain clinic, which provided at least some relief, and there is no indication of any other treatment the emergency room or urgent care could have provided. Indeed, Plaintiff's back pain began after a motor vehicle accident in which Plaintiff was hit by a tractor trailer and his vehicle flipped several times, and at least one provider explained to Plaintiff that "up to 40% of patients have ongoing issues with spine pain after being involved in a motor vehicle collision" and that "this is something that he may have to live with." (Tr. at 932.) Thus, even considering all of the ALJ's analysis, including the general discussion regarding pain, the ALJ failed to adequately explain

13

why, given the extensive opinion evidence that Plaintiff required sitting limitations, he failed to include any sitting limitation in the RFC assessment. This is particularly true where, as here, the ALJ after the first hearing concluded that a Consultative Examination was required, and the Consultative Examiner then concluded that Plaintiff had significant limitations in sitting: no more than 10 minutes at a time and no more than 4 hours in a workday, but the ALJ did not specifically address Plaintiff's sitting limitations and instead summarily concluded that Plaintiff had no limitation in sitting.

Overall, the ALJ's failure to perform a material analysis of Plaintiff's ability to sit proved harmful in two respects. First, as discussed at length above, the ALJ included no restrictions in the RFC on Plaintiff's ability to sit, without reconciling evidence that Plaintiff had difficulty sitting for a prolonged period of time. Second, the vocational expert at each hearing testified that if an individual with Plaintiff's other limitations required position changes in the form of a sit/stand option, he would be unemployable. (See Tr. at 66, 88.) Because it is the duty of the ALJ, not the Court, to resolve these evidentiary issues in the first instance, this case requires remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is further ORDERED that Defendant's

Dispositive Brief [Doc. #14] is DENIED, and Plaintiff's Dispositive Brief [Doc. #11] is GRANTED to the extent set forth herein.

This, the 31st day of March, 2026.

Joi Elizabeth Peake
United States Magistrate Judge